**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Jarrell Wilson

v. Case No. 19-cv-00786-JL

Michelle Edmark, Warden, New Hampshire State Prison for Men, Thomas Groblewski, Mary T. Skinner, Stephanie Donahue, Jennie Hennigar, Amanda Currier, Celia Englander, Helen Hanks

## REPORT AND RECOMMENDATION

Before the court is pro se plaintiff Jarrell Wilson's amended complaint (Doc. No. 13) and addendum (Doc. No. 14) to the amended complaint (collectively "amended complaint"), filed pursuant to 42 U.S.C. § 1983. The amended complaint is before this magistrate judge for preliminary review, pursuant to 28 U.S.C. § 1915A and LR 4.3(d)(1).

## Standard of Review

The court may dismiss claims asserted in an inmate's complaint, if the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious. See 28 U.S.C. § 1915A(b). In determining whether a pro se complaint states a claim, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). To

determine whether to dismiss claims for failure to state a claim, the court takes as true the factual content in the complaint and inferences reasonably drawn from those facts, strips away the legal conclusions, and considers whether plaintiff has stated a claim that is plausible on its face. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

**Background**

Wilson is a prisoner of the State of New Hampshire. At all relevant times he was housed at the New Hampshire State Prison for Men ("NHSP").

Wilson filed a complaint (Doc. No. 1) pursuant to 42 U.S.C. § 1983, in this court on July 23, 2019, raising an Eighth Amendment claim against Michelle Edmark, the Warden of NHSP. He filed an addendum (Doc. No. 5) to the complaint on September 24, 2019. After conducting an initial review of the complaint and addendum, the court determined that Wilson had failed to state a claim for relief against Edmark. See Oct. 30, 2019 Order (Doc. No. 9), approving Oct. 15, 2019 Report and Recommendation ("R&R") (Doc. No. 6). The court did not dismiss the complaint, however, but provided Wilson the opportunity to amend it. See Oct. 15, 2019 Order (Doc. No. 7). Wilson filed this amended complaint (Doc. No. 13) on November 18, 2019, and the addendum

(Doc. No. 14) on November 21, 2019.

Wilson alleges that on April 4, 2019, an unidentified inmate "sucker-punched" him, that is, struck him without warning or provocation, during breakfast in the prison cafeteria. Wilson initially was examined by a prison nurse who noted a visual deformity to Wilson's jaw and that the jaw was uneven; the nurse ordered x-rays of Wilson's jaw. See Progress Notes, Am. Compl., Ex. 1 (Doc. No. 13-1). The radiologist who reviewed the x-rays detected no fracture but stated that "[i]f clinical concern continues to exist, further workup with CT may be beneficial for imaging." Radiology Rpt., Am. Compl., Ex. 3 (Doc. No. 13-3).

An evaluation of Wilson's jaw was ordered and categorized as "Urgent." See Eval. Notes, Am. Compl., Ex. 4 (Doc. No. 13-4). At around 10:19 a.m., defendant Jennie Hennigar, an NHSP dental provider, evaluated Wilson's jaw and noted that Wilson reported that his teeth were loose and bleeding and that they did not come together when he bit down. See id. Hennigar observed that Wilson's face had an asymmetrical distortion and right-side protrusion and that palpation of Wilson's right jaw elicited a pain response. See id. She also noted that the x-ray was "not very diagnostic. Unable to see a fracture[.]" Id.

Wilson also was evaluated by defendant Stephanie Donahue, an NHSP nurse practitioner, who observed that while there did

not appear to be a jaw fracture, Wilson's jaw was visibly displaced. See id. She ordered that Wilson be placed on a liquid diet and given liquid Tylenol and Oxycodone for severe pain. See id.

Donahue and Hennigar conferred and recommended that Wilson be referred to an off-site oral surgeon for a diagnostic evaluation. See Eval. Notes, Am. Compl., Ex. 4 (Doc. No. 13-4). Defendant Mary Skinner, an NHSP prison doctor, reviewed Donahue's and Hennigar's evaluation notes and recommendation that Wilson see an oral surgeon. See id. She referred the recommendation to defendant Tom Groblewski, the NHSP Chief Medical Officer ("CMO"), for review, noting that "there is no IQ criteria for this scenario and per Centurion NH business rules Dental Director or CMO review is required for off-site consult for oral maxillofacial related conditions." Id. Defendant Groblewski approved the referral for evaluation by an off-site oral surgeon, and at around 3:54 p.m. on April 4, 2019, Traci Guillemette, who is not named as a defendant, faxed the referral to the New Hampshire Department of Corrections' Medical & Forensic Services Division ("NHDOC-MFSD"). See id. She also requested that "MobileX[ ] send disc of images," id., which the court infers is a reference to the x-ray images of Wilson's jaw. Roughly five and a half hours elapsed between defendant Hennigar's evaluation and Guillemette's fax to the NHDOC-MFSD.

Wilson was housed in the medical department for five (5) weeks following the incident in the cafeteria.

On April 10, 2019, Wilson had an appointment with an oral surgeon, identified by Wilson as Dr. Chin, who is not named as a defendant in this action, for a diagnostic evaluation. Dr. Chin was unable to make a diagnosis, however, because he did not have the x-rays of Wilson's face that had been taken at the NHSP on April 4, 2019. Wilson was returned to the NHSP without a diagnosis.

Defendant Amanda Currier, identified by Wilson as a NHSP physician/APRN, ordered a CT scan for Wilson, which was performed on April 19, 2019. Thereafter, defendant Groblewski again approved a diagnostic evaluation, which was performed on May 7, 2019 by Dr. Chin. Dr. Chin told Wilson that he had two fractures, that surgical repair would be more complicated because more than 14 days had passed since the breaks, and that post-surgery, Wilson's bite still might be off, and he might need dental work to make his bite more comfortable.

Wilson's jaw was wired shut on May 13, 2019, and the wires were removed and replaced with rubber bands on May 28, 2019. On June 27, 2019, the screws and rubber bands were removed.

Post-surgery, Wilson's jaw remains misaligned and every time he eats, he suffers excruciating pain. He has informed the NHSP medical department of the pain. During the six months

after the screws and bands were removed, the defendants scheduled medical or dental appointments for him related to his jaw, but defendant Currier canceled all of them. Wilson has been denied any post-surgery treatment for his misaligned jaw except the grinding down of his teeth to make his bite more comfortable.

Wilson seeks $180,000 in compensatory damages for pain and suffering and $180,000 in punitive damages. He also seeks injunctive relief in the form of an order that he receive reconstructive surgery on his jaw.

**Claims**

The court identifies the claims for damages and injunctive relief asserted by Wilson as follows:

> 1. Defendants Jennie Hennigar and Stephanie Donahue were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they failed to comply with NHDOC Policy and Procedure Directive ("PPD") 6.47 and treat his jaw injury as a medical emergency.
>
> 2. Defendants Helen Hanks, Commissioner of NHDOC, Michelle Edmark, Thomas Groblewski, and Mary T. Skinner violated Wilson's Eighth Amendment right against cruel and unusual punishment by failing to ensure NHSP medical staff were trained to respond to medical emergencies as required by PPD 6.47.
>
> 3. Defendants Hennigar, Donahue, Skinner, Groblewski, Amanda Currier, and Celia Englander, identified as the NHSP chief physician, were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they failed

to immediately order a CT scan, as recommended by the radiologist.

4. Defendants Henniger, Donahue, Skinner, Groblewski, Currier, and Englander were deliberately indifferent to Wilson's serious medical needs in violation of the Eighth Amendment when they failed to order a CT scan prior to a first appointment with an oral surgeon.

5. Defendant Currier was deliberately indifferent to Wilson's serious medical needs in violation of the Eighth Amendment when she canceled all his post-surgery medical/dental appointments related to his misaligned jaw.

6. Defendants Hennigar, Donahue, and Skinner misdiagnosed Wilson.

7. Defendants Groblewski and Englander failed to ensure Wilson was properly diagnosed.

## Discussion

### I. Eighth Amendment Elements

"Government officials violate the Eighth Amendment if they display 'deliberate indifference' to a prisoner's 'serious medical needs.'" Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 74 (1st Cir. 2016) (quoting Gaudreault v. Muni. of Salem, 923 F.2d 203, 208 (1st Cir. 1990)). "[T]o prove an Eighth Amendment violation, a prisoner must satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (citing Estelle v.

Gamble, 429 U.S. 97, 106 (1976); Sires v. Berman, 834 F.2d 9, 12 (1st Cir. 1987)).

"A 'serious medical need' 'is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Miranda-Rivera, 813 F.3d at 74 (quoting Gaudreault, 923 F.2d at 208). As to the subjective prong5, an inmate must allege that defendants committed "acts or omissions . . . sufficiently harmful to evidence deliberate indifference to serious medical needs." Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011) (quoting Gamble, 429 U.S. at 106) (internal quotation marks omitted). "Deliberate indifference requires (1) that 'the official . . . be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) that he draw that inference." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

## II. Failure to Comply with Prison Policy (Claim 1)

Wilson claims defendants Jennie Hennigar and Stephanie Donahue were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they failed to comply with PPD 6.47, which sets forth policy and procedures for staff to respond to a medical emergency at the prison. See PPD 6.47, Am. Compl., Ex. 2 (Doc. No. 13-2), at 1. Specifically,

Wilson contends that PPD 6.47 requires that a medical emergency be declared when an inmate presents with "[c]omplaints associated with a heart attack (chest pain with or without nausea, sweating, and pain from chest to jaw or down either or both arms)." Am. Compl. (Doc. No. 13), at ¶9 (quoting PPD 6.47(IV)(A)(2)(d) (2014), Am. Compl. Ex. 2 (Doc. No. 13-2), at 1).

As an initial matter, Wilson does not allege any facts from which an inference can be drawn that he complained to either Hennigar or Donahue of symptoms associated with a heart attack. PPD 6.47 does not list either "broken jaw" or "jaw injury" as a symptom associated with a heart attack.

Next, an allegation that prison officials failed to follow prison rules or policies does not set forth a constitutional claim. McFaul v. Valenzuela, 684 F.3d 564, 579 (5th Cir. 2012); see also Querido v. Wall, C.A. No. 10-098 ML, 2010 U.S. Dist. LEXIS 139201, at *14, 2010 WL 5558915, at *3 (D.R.I. Dec. 8, 2010), R&R adopted, 2011 U.S. Dist. LEXIS 1882, 2011 WL 63503 (D.R.I. Jan. 7, 2011). Accordingly, Wilson cannot state a viable Eighth Amendment claim against Hennigar and Donahue for violation of prison policies, and the district judge should dismiss Claim 1 for failure to state a claim upon which relief may be granted, see 28 U.S.C. § 1915A(b).

II. Supervisory Liability (Claim 2)

Wilson claims that defendants Hanks, Edmark, Groblewski, and Skinner violated his Eighth Amendment right against cruel and unusual punishment by failing to ensure NHSP medical staff were trained, as required by PPD 6.47(III), to respond to medical emergencies. Wilson contends that had NHSP medical staff been trained in the emergency medical responses outlined in PPD 6.47, he would have received proper surgical care within fourteen (14) days, and his jaw would not have remained misaligned after the surgery. He contends further that defendant Skinner's assertion that "there is no IQ criteria for this scenario," see Eval. Notes, Am. Compl., Ex. 4 (Doc. No. 13-4)," is evidence that the NHSP medical staff were not trained in the emergency medical responses required by PPD 6.47.

Under § 1983, courts have treated claims for failure to train under the general category of supervisory liability. "Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization." Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir.2005) (citing Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir.1999)). While a supervisor cannot be held liable for the unconstitutional actions of his or her subordinates on a respondeat superior theory, liability can attach if those

actions resulted from a supervisor's failure to train or to supervise his or her subordinates. See City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 (1989).

Wilson does not allege any facts from which an inference can be drawn that the defendants failed to train Hennigar and Donahue, the only other defendants Wilson alleges examined him on April 4, 2019, in the emergency medical responses outlined in PPD 6.47. First, Wilson does not allege any facts from which an inference can be drawn that Hanks, Edmark, Groblewski, or Skinner was responsible for ensuring NHSP medical staff were trained to respond to medical emergencies as set forth PPD 6.47.

Next, PPD 6.47 requires that, when any staff member encounters a person that requires emergency medical attention,

> the staff member will . . . declare a medical emergency . . . for the following reason(s):
>
> a. Unconscious person;
>
> b. No breathing;
>
> c. Severe bleeding;
>
> d. Complaints associated with a heart attack . . .;
>
> e. Seizures that last more than 5 minutes, return or result in injury

PPD 6.47(IV)(A)(2) (Doc. No. 13-2), at 1. Other than frivolously asserting that a jaw injury is a complaint associated with a heart attack, Wilson does not allege that he

met any of the above criteria. Nor has he identified any provision in PPD 6.47 requiring that a jaw injury be treated as a medical emergency.

Where injuries cannot be assessed by visual examination, PPD 6.47(IV)(D)(6) requires that nursing staff consult with the physician or advanced practice registered nurse on site to determine the need to send the inmate to the emergency room. See (Doc. No. 13-2), at 2. Wilson was examined by an advanced practice registered nurse (Donahue), who consulted with the on-site dental provider (Hennigar) and a medical doctor (Skinner) about how to proceed in Wilson's case. See Eval. Notes, Am. Compl., Ex. 4 (Doc. No. 13-4).

For the reasons stated, Wilson has failed to state an Eighth Amendment claim for failure to train against defendants Hanks, Edmark, Groblewski, and Skinner. Accordingly, the district judge should dismiss Claim 2.

## III. CT Scan (Claims 3 & 4)

### A. Defendants Hennigar, Donahue, Skinner, and Groblewski

Applying the relevant factors to the facts alleged in the amended complaint, the court concludes that Wilson has stated sufficient facts for Claims 3 and 4 against Hennigar, Donahue, Skinner, and Groblewski to survive initial review. In the Order issued this date, the court has directed those defendants to

answer, or otherwise plead, with respect to Claims 3 and 4.

B. Defendants Currier and Englander

"It is well-settled that only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable" under § 1983. Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 146 (1st Cir.2006) (quotation marks omitted). Wilson has failed to allege any facts from which it can be inferred that defendant Englander had any role in Wilson's care, or decisions regarding Wilson's care, related to his broken jaw.

Wilson also has failed to allege any facts from which it can be inferred that defendant Currier had any role in Wilson's care, or decisions regarding Wilson's care, until after Wilson's April 10, 2019 appointment with the oral surgeon. Claims 3 and 4, however, allege Eighth Amendment violations that occurred prior to that appointment with the oral surgeon.

In sum, Wilson has failed to state Eighth Amendment claims against either defendant Englander or defendant Currier for failure to order that Wilson have a CT scan before his April 10, 2019 appointment with the oral surgeon. Consequently, the district judge should dismiss Claims 3 and 4 against defendants Englander and Currier.

IV. Post-Surgery Care (Claim 5)

Applying the relevant factors to the facts alleged in the amended complaint, the court concludes that Wilson has stated sufficient facts for Claim 5 against defendant Currier to survive initial review. In the Order issued this date, the court has directed Currier to answer, or otherwise plead, with respect to Wilson's claim that she was deliberately indifferent to his serious medical needs when she cancelled all his jaw-related medical and/or dental appointments scheduled in the first six months after his surgery.

V. Negligence (Claims 6 & 7)

Wilson claims defendants Hennigar, Donahue, and Skinner misdiagnosed him, see Am. Compl. Add. (Doc. No. 14), at 1, and that defendants Groblewski and Englander failed to ensure that he was properly diagnosed, see Am. Compl. (Doc. No. 13), at 15 ¶ (2). Construing the complaint, liberally, as it must, see Erickson, 551 U.S. at 94, the court considers Claims 6 and 7 as alternative claims of medical negligence.

A plaintiff states a viable claim of medical negligence under New Hampshire law by alleging that he suffered a medical injury, proximately caused by a medical care provider's failure to provide care consistent with the standard of reasonable professional practice at the time the care was rendered. See

Beckles v. Madden, 160 N.H. 118, 124, 993 A.2d 209, 214 (2010) (citing RSA § 507-E:2).

Wilson alleges that because the defendants failed to order a CT scan when the x-ray proved to be diagnostically inconclusive, treatment of his jaw was delayed, making surgery more difficult and the outcome less favorable. He alleges that because of the delay and difficulty of the surgery, his jaw remains misaligned and he continues to suffer from pain when he eats.

Applying the relevant factors to the facts alleged in the amended complaint, the court concludes that Wilson has stated sufficient facts for Claim 6 against defendants Hennigar, Donahue, and Skinner, and Claim 7 against defendant Groblewski to survive initial review. In the Order issued this date, the court has directed those defendants to answer, or otherwise plead, with respect to Wilson's claims that they were medically negligent under state law.

Wilson has failed to allege any facts from which it can be inferred that defendant Englander had any role in Wilson's care, or decisions regarding Wilson's care, or that she owed him a duty of care related to his jaw injury. As such, Wilson has failed to state a medical negligence claim against Englander. Consequently, the district judge should dismiss Claim 7 against defendant Englander.

Conclusion

For the foregoing reasons, the district judge should dismiss: Claim 1; Claim 2; Claims 3 and 4 against defendants Amanda Currier and Celia Englander; and Claim 7 against defendant Celia Englander. The district judge also should order that defendants Helen Hanks, Michelle Edmark, and Celia Englander be terminated as defendants in this action.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

Andrea K. Johnstone
United States Magistrate Judge

July 17, 2020

cc: Jarrell Wilson, pro se