UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Jarrell Wilson

v.                                                                Civil No. 19-cv-786-JL
                                                                  Opinion No. 2021 DNH 184

Thomas Groblewski, Mary T. Skinner,
Stephanie Donahue, Jennie Hennigar, and
Amanda Currier

**MEMORANDUM ORDER**

The defendants, members of the New Hampshire Department of Corrections' medical and dental staff, move for summary judgment on the basis that the plaintiff failed to exhaust available administrative remedies before seeking recovery in this suit under 42 U.S.C. § 1983, as required under the Prison Litigation Reform Act. The plaintiff, Jarrell Wilson, was an inmate at the New Hampshire State Prison during the time period relevant to this suit. Wilson suffered injuries to his jaw after a physical altercation that took place at the prison in April 2019. He seeks recovery for damages he allegedly suffered because the defendants, who contributed to the assessment and treatment of his injuries, acted with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. Wilson asserts three Eighth Amendment claims against five defendants—Dr. Thomas Groblewski, the NHDOC Chief Medical Officer; Dr. Mary T. Skinner; Dr. Stephanie Donahue; Dr. Jennie Hennigar, a dental provider; and Nurse Amanda Currier. He also asserts two claims of medical negligence against four of these defendants, Dr. Groblewski, Dr. Skinner, Dr. Donahue, and Dr. Hennigar. The court has

1

subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1367 (supplemental jurisdiction).

The defendants move for summary judgment on Wilson's Eighth Amendment claims and request that the court decline to exercise supplemental jurisdiction over the medical negligence claims upon granting summary judgment. After reviewing the record and holding oral argument, the court denies the summary judgment motion, finding that material disputes of fact remain as to whether the final step in the NHDOC grievance policy, which Wilson did not exhaust, was available to Wilson and thus subject to the PLRA exhaustion requirement.

## I. Applicable legal standard

"Summary judgment is appropriate when the evidence of record 'shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "A genuine issue is one that could be resolved in favor of either party, and a material fact is one that has the potential of affecting the outcome of the case." Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotation omitted).

In this case, the defendants move for summary judgment based on a failure to exhaust administrative remedies as required by the PLRA, which is an affirmative defense. See Jones v. Bock, 549 U.S. 199, 212 (2007). Where, as here, "the party moving for summary judgment bears the burden of proof on an issue, he cannot prevail

unless the evidence that he provides on that issue is conclusive." E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002) (emphasis in original) (internal quotation omitted). Further, at the summary judgment stage, the court must "rehearse the facts in the light most favorable to the nonmoving party (here, the plaintiff), consistent with record support," and give him "the benefit of all reasonable inferences that those facts will bear." Noviello v. City of Boston, 398 F.3d 76, 81-82 (1st Cir. 2005) (internal citation omitted). Thus, the court will not grant summary judgment to the defendants unless, based on the record viewed in the plaintiff's favor, no reasonable jury could find for the plaintiff.

## II. Background

Wilson was an inmate at the New Hampshire State Prison at all times relevant to this suit. On April 4, 2019, Wilson was sitting at a table in the prison's cafeteria and eating breakfast when another prisoner hit him on the right side of his mouth and a prison guard subsequently "hit [Wilson's] head into the table."[1]

Wilson claims that he was taken to the medical office right away after this incident, where defendants Dr. Skinner, Dr. Donahue, and Dr. Hennigar examined Wilson's jaw. Dr. Donahue observed that Wilson's jaw was visibly displaced. Dr. Hennigar found that Wilson's face exhibited an "anterior and right side protrusion," and his teeth were loose and bleeding.[2] "One or more of the defendants also ordered an x-

---

[1] Pl.'s Second Amendment Complaint (doc. no. 42) at ¶¶ 10-13.

[2] Id. at ¶ 26.

3

ray[.]"³ "No fracture was detected from the x-ray," and the radiologist noted that "further work-up with CT may be beneficial for imaging."⁴ The CT scan was not ordered at this point.

Dr. Donahue and Dr. Hennigar recommended that Wilson be referred to an off-site oral surgeon for a diagnostic evaluation, and Defendant Dr. Groblewski approved the referral. Wilson first visited the off-site oral surgeon on April 10, 2019. The surgeon was unable to provide Wilson with a diagnostic evaluation during that appointment because he did not have an x-ray or CT scan of Wilson's injured area.

After this, defendant Nurse Currier approved a CT scan for Wilson, which took place around April 19, and Dr. Groblewski approved Wilson's second visit to the oral surgeon, which occurred around May 7--roughly one month after Wilson's jaw was injured. During the second visit, the oral surgeon identified two fractures in Wilson's jaw. The surgeon stated that "usually broken jaws must be operated on" one to two weeks "after the injury occurs."⁵ He explained that, even after the procedure, Wilson's jaw could remain "off center."⁶

Wilson visited the oral surgeon three times in May and June to complete the surgical procedure. Nurse Currier canceled Wilson's post-surgery appointments, which

---

³ Id. at ¶ 21.

⁴ Id. at ¶ 22.

⁵ Id. at ¶ 41.

⁶ Id.

4

were scheduled over the six months following the procedure.[7] After the surgery, Wilson's jaw remains "visibly misaligned," and he "experiences agonizing pain" when eating.[8]

Wilson initially filed suit in July 2019. After a preliminary review, Wilson amended his complaint, and this court subsequently appointed pro bono counsel in February 2021. Wilson filed the operative Second Amended Complaint a few months later. He asserts three Eighth Amendment claims against the five defendants under 42 U.S.C. § 1983 and two medical negligence claims against Dr. Groblewski, Dr. Hennigar, Dr. Donahue, and Dr. Skinner. All five defendants now move for summary judgment.

### III. Analysis

The defendants argue that Wilson failed to satisfy the PLRA's exhaustion requirement before filing the instant suit. The PLRA prohibits prisoners from initiating an action to challenge prison conditions under 42 U.S.C. § 1983 "or any other Federal law[] . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The administrative remedies "are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 228. Thus, to satisfy the exhaustion requirement, "a prisoner must file complaints and appeals in the place, and at the time,

---

[7] Id. at ¶ 47.

[8] Id. at ¶ 46.

the prison's administrative rules require." Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)).

But the PLRA exhaustion requirement "contains one significant qualifier: the remedies must indeed be 'available' to the prisoner." Ross v. Blake, 578 U.S. 632, 639 (2016). In other words, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Id. at 642 (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).

Failure to exhaust administrative remedies is an affirmative defense that must be "raised and proved by the defense." Cruz Berrios v. Gonzalez-Rosario, 630 F.3d 7, 11(1st Cir. 2010) (citing Jones, 549 U.S. at 216). Thus, to prevail on summary judgment, the defendants must show that no reasonable jury could find that Wilson exhausted the administrative remedies available to him before commencing this action. The defendants fail to do so on this record.

**A. NHDOC grievance policy**

To begin, the NHDOC's grievance policy sets forth a three-step procedure for prisoners to raise complaints. First, within 30 days of the relevant incident, the prisoner must detail his complaint in writing on a Request Slip and submit the Slip to "the lowest level staff person with the authority to address the issue raised."[9] The recipient or the appropriate staff member then investigates the complaint and, within 15 days of receiving the complaint, responds by granting relief, denying relief, or referring the prisoner to the

---

[9] Doc. no. 43-2 at ¶ 3 (quoting doc. no. 43-3 at 3).

staff or area that can address the complaint. The prisoner is notified of "the findings and what the resolution is in writing . . . ."[10] .

After receiving written notification of the outcome, the prisoner can escalate the complaint by submitting it "to the appropriate warden, director, or administrator" as a Level I Grievance.[11] Upon receipt, the Level I Grievance is date stamped, and "the receipt of and responses to [the] grievance[]" are recorded in a "grievance tracking form."[12] The warden, director, or administrator investigates the issue if needed, responds within 30 days of receiving the grievance, and communicates the outcome to the prisoner in writing. After obtaining a written response to the Level I Grievance, the prisoner can escalate the issue a final time by submitting it to the Commissioner as a Level II Grievance. The Level II Grievance undergoes the same process as the Level I Grievance, ending with written notification to the prisoner of the Commissioner's determination.

At each level of review, the complaint or grievance must "contain sufficient detail to allow for investigation," including, but not limited to, the nature of the complaint; the name of the resident, witnesses, and staff involved; the date of the incident; policies or rules violated; and the "relief or action which is sought."[13] Also, a complaint or

---

[10] Doc. no. 43-3 at 4.

[11] Id. at 5.

[12] Id.

[13] Id. at 4.

7

grievance "shall not be accepted unless it demonstrates that the [previous level of review] has been utilized and exhausted."[14]

### B. Wilson's complaints and grievances

The record contains a single grievance form filed by Wilson, which the defendants attached to their Reply brief. The grievance form is marked with a stamp noting that it was received on August 13, 2019, and the handwritten phrase "[First] Level Grievance" appears in the top, right-hand corner of the document. In the same handwriting, Wilson described his complaint as follows: "I would like to grieve medical for the lack of proper care to my medical needs I received while under their care and housed in medical. Where my medical needs were know[n], and [I was] denied the proper attention[.]"[15]

On the bottom half of the form, in the section labeled "Director's Action," Paula Mattis wrote, "Please see [Number] 9 on back. Additionally, please be specific when you write."[16] The back side of the form is entitled "Instructions for Use of Grievance Form," and the ninth entry provides that "[p]risoners must use [R]equest [S]lips to attempt to resolve issues prior to submitting a grievance. Grievances will not be accepted unless it is demonstrated that request slips have not worked . . . ."[17]

---

[14] Id. at 5, 7. The policy builds in an exception to this requirement, allowing a prisoner to skip the first or second step of the process when he or she can demonstrate "that using th[at] [step] . . . is likely to" cause certain risks or harm to the prisoner. Id. at 4, 6. The applicability of this exception is not at issue here, given that the defendants' arguments center on the third and final step in the NHDOC grievance policy, and not the first two.

[15] Doc. no. 50-3 at 2.

[16] Id.

[17] Id. at 3.

The defendants also submit two declarations, one from Jay Mackey, the Administrator of Classifications and Client Records at the NHDOC, and another from Linda Susca, the "Supervisor VI-Client Records" at the NHDOC.[18] Mackey states that, given his role, he is "familiar with the DOC's grievance policy and procedures."[19] He describes the grievance policy and then states that Wilson only filed one grievance, which was "responded [to] with a reminder that [Wilson] should refer to '#9 on back.'"[20] According to Mackey, Wilson did not "appeal the response."[21] Susca, in turn, states that, as part of her role, she "input[s] inmate grievances into the [DOC's] computer recordkeeping system."[22] Susca does not assert that she entered Wilson's grievance form(s) into the recordkeeping system. She states that she reviewed Wilson's "grievance file," and Wilson "received a response from Paula Mattis" but "did not appeal [Mattis's] grievance response to the Commissioner."[23]

---

[18] The defendants submitted Susca's declaration as an attachment to their Reply brief. Wilson contends that the court should disregard the declaration because it raises new facts and arguments, and Reply briefs should be "restricted to rebuttal of factual and legal arguments raised in the objection or opposition memorandum." Pl.'s Surreply (doc. no. 51) at 1 (quoting L.R. 7.1(e)(1)). The court properly considers Susca's declaration because it does not set forth new facts or arguments. Rather, the defendants reasonably use the declaration as a vehicle to elaborate on their position, which was detailed in their opening brief, that NHSP staff responded to Wilson's Level I Grievance, and Wilson did not appeal this response.

[19] Doc. no. 43-2 at ¶ 2.

[20] Id. at ¶ 8.

[21] Id. at ¶ 9.

[22] Doc. no. 50-2 at ¶ 3.

[23] Id. at ¶¶ 6, 8.

Wilson counters with his own affidavit, in which he recounts more extensive participation in the grievance procedure. He explains that he was housed in the prison's Secure Housing Unit after his jaw surgery, and a nurse visited the unit for "sick call" every day.[24] Wilson "repeatedly" notified the nurse of his jaw pain, but "these complaints were never addressed . . . ."[25] Following that, Wilson filled out Request Slips with a description of his "need for further medical treatment"; addressed the Slips to NHSP staff members including defendant Dr. Groblewski; and gave them to Corrections Officers for delivery.[26] According to Wilson, "[e]ach time [he] submitted a Request Slip, a copy of it was returned to [him], and [his] requests were denied . . . ."[27] After receiving these denials, Wilson filed Grievance Forms, to which he ultimately attached all of his copies of the denied Request Slips. Wilson states that he filed multiple grievances and "never received any response from any of the prison staff."[28]

The defendants assert that Wilson failed to exhaust his administrative remedies by skipping the last step in the NHDOC grievance policy—appealing the Level I Grievance by filing a Level II Grievance.[29] Wilson argues that the final step was not available to

---

[24] Doc. no. 47-2 at ¶ 4.

[25] Id.

[26] Id. at ¶¶ 5-8.

[27] Id. at ¶ 9.

[28] Id. at ¶ 13.

[29] As described above, Mattis's response to Wilson's Level I Grievance referred to the requirement that prisoners "use [R]equest [S]lips to attempt to resolve issues prior to submitting a grievance." Doc. no. 50-3 at 3. The defendants do not argue in their briefs that Wilson failed

him because he did not receive any response to his Level I Grievance(s). Based on this record, the defendants do not provide "conclusive" evidence supporting their position and thus do not merit summary judgment. See Union Independiente de la Autoridad de Acueductos y Alcantarillados, 279 F.3d at 55.

Importantly, the NHDOC grievance policy requires that a prisoner be able to demonstrate that he "utilized and exhausted" each level of review before proceeding to the next one. Thus, if Wilson did not receive Mattis's response to his Level I Grievance, he would not have been able to demonstrate completion of that level of review and pursue the grievance further by submitting a Level II Grievance. Under those circumstances, the final step in the grievance policy would have been unavailable to Wilson. See Ross, 578 U.S. at 643 (stating that "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end--with officers unable or consistently unwilling to provide any relief to aggrieved inmates"); see also Ojo v. Medic, No. 11-CV-210, 2012 WL 7150497, at *5-6, (McCafferty, J.) (D.N.H. Dec. 17, 2012), report and recommendation approved, 2013 WL 593485 (D.N.H. Feb. 14, 2013) (noting that an administrative remedy is unavailable for purposes of the PLRA exhaustion requirement when the prison officials prevent or impede the prisoner from utilizing the remedy and citing supporting circuit court cases).

---

to satisfy the PLRA exhaustion requirement by neglecting to submit Request Slips. At oral argument, the defendants confirmed that they are not pursuing this argument.

The defendants only provide a declaration from Susca in support of their assertion that Wilson received Mattis's response to his Level I Grievance. In this declaration, Susca states that Wilson "received a response from Paula Mattis." But the declaration lacks the proper factual foundation for this statement. Susca does not detail the basis for her bare assertion, by, for example, providing or referencing relevant NHDOC records or claiming that she has personal knowledge of Wilson's specific experience. Wilson, on the other hand, states in his declaration that he never received any responses to his grievances. The holes in the defendants' evidence, as well as Wilson's contradictory assertion in his own declaration, leave room for a reasonable jury to conclude that Wilson did not receive Mattis's response to his Level I Grievance.

Thus, on this record, the defendants have not satisfied their burden to conclusively show that the Level II Grievance, which Wilson did not exhaust, was an available administrative remedy that is subject to the PLRA exhaustion requirement. Given that material disputes of fact remain as to the availability of the last step in the NHDOC grievance policy, defendants are not entitled to summary judgment on Wilson's Eighth Amendment claims based on Wilson's failure to exhaust.[30]

---

[30] Since this court denies the defendants' motion based on the material disputes of fact with respect to Wilson's exhaustion of the third step in the NHDOC grievance policy, the court need not consider Wilson's alternative argument that the NHDOC grievance policy is unconstitutional.

## IV.   Conclusion

For the reasons state above, the defendants' motion for summary judgment[31] is DENIED.

   **SO ORDERED.**

                                                                      _/s/ Joe Laplante_
                                                                      Joseph N. Laplante
                                                                      United States District Judge

Dated:   December 3, 2021

cc:   Michael A. Delaney
        Pamela L.P. Eaton
        Samuel R. V. Garland
        Amanda Ellen Quinlan
        Megan Alydia Sigar
        Stephen J. Soule

---

[31] Doc. no. 43.