UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Jarrell Wilson

    v.                                                                      Civil No. 19-cv-786-JL
                                                                           Opinion No. 23 DNH 114
Thomas Groblewski, Mary T. Skinner,
Stephanie Donahue, Jennie Hennigar,
Amanda Currier, and Joseph Shin

**MEMORANDUM ORDER**

    This case concerns the medical treatment received by a plaintiff while incarcerated at New Hampshire State Prison. The plaintiff, Jarrell Wilson, suffered fractures to his jaw after a physical altercation that took place at the prison on April 4, 2019. He underwent oral surgery to treat the fractures more than a month later, on May 13. Wilson claims that the defendants, healthcare providers involved in his diagnosis and treatment, did not respond to his injuries in a proper, prompt manner.

    Wilson asserts claims against six defendants. Five of the defendants were employed by the New Hampshire Department of Corrections during the relevant period—Dr. Thomas Groblewski, the NHDOC Chief Medical Officer; Dr. Jennie Hennigar, a dental provider; Dr. Stephanie Donahue; Dr. Mary T. Skinner; and Nurse Amanda Currier (the "NHDOC defendants"). The sixth defendant, Dr. Joseph Shin, is an off-site oral surgeon to whom Wilson was referred for evaluation and treatment. In Counts 1, 2, and 3, Wilson asserts 42 U.S.C. § 1983 claims against the NHDOC defendants, alleging that they acted with deliberate indifference to his serious medical

needs, in violation of the Eighth Amendment of the U.S. Constitution. In Counts 4 and 5, Wilson raises medical negligence claims against Dr. Groblewski, Dr. Hennigar, Dr. Donahue, Dr. Skinner, and Dr. Shin. The defendants move for summary judgment on each of the claims.[1]

The court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1367 (supplemental jurisdiction). After reviewing the record and holding oral argument, the court grants some parts of the motion and denies others. The court denies summary judgment with respect to the Eighth Amendment claims, given that multiple, material disputes of fact remain as to each of them. The court grants summary judgment as to the medical negligence claims, however, finding that Wilson cannot sustain his burden to demonstrate, with expert testimony, that the defendants' alleged actions proximately caused his injuries.

**I.    Applicable legal standard**

"Summary judgment is appropriate when the evidence of record 'shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "A genuine issue is one that could be resolved in favor of either party, and a material fact is one that

---

[1] The NHDOC defendants filed a single summary judgment motion, and Dr. Shin filed a separate summary judgment motion. The court does not analyze the motions separately, since the dispositive arguments largely overlap.

has the potential of affecting the outcome of the case." Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotation omitted).

## II. Background

The following facts are not in dispute.[2] Wilson was an inmate at the New Hampshire State Prison at all times relevant to this suit. On April 4, 2019, he was eating breakfast in the prison's cafeteria when another prisoner hit him on the right side of his mouth. Wilson was taken to the medical office after this incident. A staff member who observed Wilson noted in his medical record that he had a "visual deformity to [his] jaw[,]" and his jaw was "uneven."[3] One or more of the NHDOC defendants examined Wilson, ordered an x-ray, placed Wilson on a liquid diet and pain medication, and determined that he should be referred out to an oral surgeon.

Wilson had his first appointment with the off-site oral surgeon, Dr. Shin, on April 10, 2019. In his notes regarding the appointment, Shin wrote, "I would like to obtain a facial CT to determine if subcondylar fracture is present. I am unable to make these

---

[2] Under the Local Rules, the party moving for summary judgment must "incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1(a). "All properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party." L.R. 56.1(b). Consistent with this, in reciting the facts, the court did not include purportedly undisputed facts that the defendants listed but did not support with accurate record citation, and the court did include properly supported facts that the plaintiffs did not address and/or oppose.

[3] Wilson's Medical Record (doc. no. 86) at 55.

3

determinations from examinations alone."[4]  Dr. Shin conveyed this request to the prison, and the facility ordered the CT scan.[5]

Wilson's CT scan occurred on April 19, and it revealed two fractures.  After that, Wilson had a follow-up appointment with Dr. Shin on May 7, during which Dr. Shin discussed a surgical option for treating the fractures.  Dr. Shin told Wilson that "[a]t this time after the injury, surgical repair is a more involved procedure, as it is past the 14[-]day mark."[6]  Following this appointment, Dr. Shin performed Wilson's surgery at Dartmouth Hitchcock Medical Center on May 13.  Wilson returned to DHMC on May 28 and June 27 for post-operative treatment from Dr. Shin.

Shortly thereafter, in July 2019, Wilson filed the instant suit as a pro se plaintiff.  After a preliminary review under 28 U.S.C. § 1915A and Local Rule 4.3(d)(1), Wilson amended his complaint, and this court subsequently appointed pro bono counsel in February 2021.  Wilson filed a Second Amended Complaint a few months later, in which he asserted claims against each of the NHDOC defendants.  Then, in September 2021, the NHDOC defendants submitted a DeBenedetto disclosure identifying Dr. Shin as a "potentially liable party."[7]  Specifically, the NHDOC defendants allege that "Dr. Shin

---

[4] Id. at 82.  "A computerized tomography (CT) scan combines a series of X-ray images taken from different angles around [the] body and uses computer processing to create cross-sectional images"; CT scans "can be used to visualize nearly all parts of the body and . . . to diagnose disease or injury."  The Mayo Clinic, CT Scan, https://www.mayoclinic.org/tests-procedures/ct-scan/about/pac-20393675.

[5] Wilson's Medical Record (doc. no. 86) at 53.

[6] Id. at 75.

[7] NHDOC Defendants' DeBenedetto Disclosure (doc. no. 52) at ¶ 2.

bears some fault regarding the delay" in Wilson's treatment and diagnosis, which Wilson claims caused him harm.[8]  After that, Wilson filed the operative Third Amended Complaint, in which he added Dr. Shin as a defendant.

### III.    Analysis

The defendants move for summary judgment as to each of Wilson's claims.  The court considers the Eighth Amendment claims first, and then turns to the medical negligence claims.

####    A.    Eighth Amendment deliberate indifference claims

***Eighth Amendment standard.***  The Eighth Amendment to the U.S. Constitution prohibits "[e]xcessive bail[,] . . . excessive fines[,[ . . . [and] cruel and unusual punishments."  U.S. Const. amend. VIII.  "Government officials violate the Eighth Amendment if they display deliberate indifference to a prisoner's serious medical needs." Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 74 (1st Cir. 2016) (internal quotations omitted).  An Eighth Amendment claim premised on inadequate medical care contains both a subjective and an objective element.  The objective inquiry is whether the detainee had a "serious medical need," that is, a medical need "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 74.

The subjective element requires the plaintiff to show "that prison officials possessed a sufficiently culpable state of mind, namely one of deliberate indifference to

---

[8] Id. at ¶ 3.

an inmate's health or safety." Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011) (quoting Burrell v. Hampshire Cty., 307 F.3d 1, 8 (1st Cir. 2002)). "To show such a state of mind, the plaintiff must provide evidence that the defendant had 'actual knowledge of impending harm, easily preventable,' and yet failed to take the steps that would have easily prevented that harm." Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018) (quoting Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993)).

Deliberate indifference can take many forms, but "substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation." Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007). The "obvious case" of deliberate indifference "would be a denial of needed medical treatment in order to punish the inmate," but deliberate indifference could also "take the form of 'wanton' or criminal recklessness in the treatment afforded." Zingg, 907 F.3d at 635 (internal quotations omitted). The plaintiff can make this showing "by demonstrating that the defendant provided medical care that was 'so inadequate as to shock the conscience,'" or that was "so clearly inadequate as to amount to a refusal to provide essential care." Id. (quoting Feeney, 464 F.3d at 162 and Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991)). Finally, even if prison officials are aware of a serious medical risk, "they cannot be deliberately indifferent if they responded reasonably to the risk, even if the harm ultimately was not avoided." Burrell, 307 F.3d at 8.

***Claims against Dr. Groblewski, Dr. Hennigar, Dr. Donahue, and Dr. Skinner (Counts 1-2).*** In Counts 1 and 2, Wilson alleges that defendants Dr. Groblewski, Dr.

6

Hennigar, Dr. Donahue, and Dr. Skinner violated the Eighth Amendment by "fail[ing] to immediately order a CT scan" for him, and by sending him "to Dr. Shin without a CT scan, thus rendering the referral appointment useless."[9] According to Wilson, these actions delayed his diagnosis and treatment, "made surgical repair of Mr. Wilson's jaw extremely complicated and much less successful than it otherwise would have been if the jaw had been treated in a timely manner," and "resulted in injuries . . . that would not have occurred if he had been treated in a timely manner."[10]

      The defendants argue that they are entitled to summary judgment because Wilson cannot prove the subjective or objective elements of his deliberate indifference claims. Beginning with the objective element, the defendants contend, with little factual or legal support, that Wilson "cannot establish that his facial fracture was objectively serious."[11] The court cannot make such a finding as a matter of law based on the record before it. Wilson's medical record, for example, includes a note from Dr. Donahue, dated April 4, 2019, describing his jaw as "visibly displaced."[12] Dr. Hennigar wrote a note on the same day, which states that Wilson's face was "asymmetrical distorted," Wilson's "[t]eeth d[id] not come together at all on closure," and Wilson was "unable to open [his mouth]

---

[9] Third Amendment Compl. (doc. no. 65) at ¶¶ 62, 70.

[10] Id. at ¶¶ 61, 71.

[11] NHDOC Defs.' Mot. for Summ. J. (doc. no. 86) at 8.

[12] Wilson's Medical Record (doc. no. 86) at 54.

fully."[13]  This and other, similar evidence in the record can reasonably support the inference that Wilson's injuries were objectively serious.

With respect to the subjective element of the Eighth Amendment claims, the defendants argue that no reasonable jury could find that the defendants acted with deliberate indifference because Wilson's surgery was successful, and because the defendants took steps to diagnose and treat Wilson.  Assuming, without deciding, that the summary judgment record supports both of these assertions, material disputes of fact still remain and preclude summary judgment.  For example, the record reveals gaps in time between the date of Wilson's injury, the date of his CT scan, and the date of his surgery.  The record does not resolve the reasons for these gaps,[14] and whether one or more of the defendants could have taken steps to shorten these gaps and thereby avoid harm to Wilson.  Further, the parties dispute, and the record does not resolve, what each defendant knew about Wilson's condition and the risks posed to him by delays in diagnosis and treatment.  Summary judgment is therefore denied as to Counts 1 and 2.

***Claim against Currier (Count 3).***  In Count 3, Wilson alleges that Currier cancelled all of his appointments that were scheduled over the six-month period following his June 27, 2019 appointment with Dr. Shin.  Wilson claims that Currier took

---

[13] Id. at 55.

[14] During oral argument, counsel for the NHDOC defendants made certain claims regarding the timing of Wilson's treatment as if they were undisputed facts.  For example, counsel stated that the NHDOC defendants scheduled Wilson's appointment with Dr. Shin as quickly as possible, and counsel suggested that scheduling a CT scan prior to Wilson's first appointment with Dr. Shin would have delayed his treatment.  As previously noted, the court treats assertions like these, which are not supported by the summary judgment record and/or are properly opposed by the plaintiff, as disputed facts.  See supra Section II; see also L.R. 56.1.

this step "without appropriate justification," while she knew that Wilson was experiencing "excruciating pain every time he chew[ed] or [ate]."[15] The summary judgment record reveals several, genuine disputes of material fact going to both elements of this Eighth Amendment claim, including but not limited to the seriousness of Wilson's post-operative pain, the purpose of the post-operative appointments that Currier cancelled, and Currier's knowledge of Wilson's pain and the risks he could or would face if it was not addressed in follow-up appointments. The defendants attempt to minimize the materiality of these disputes with two arguments, neither of which the court finds convincing.

First, the defendants contend that no further checkups were needed after Wilson's June 27, 2019 appointment with Dr. Shin. The defendants base this assertion on a single phrase in Dr. Shin's "after visit summary" for the June 27 appointment: under the heading "next steps," Dr. Shin wrote, "no follow-up appointment needed."[16] This phrase is not necessarily as definitive as the defendants suggest. A jury could reasonably infer that this instruction refers to follow-up appointments with Dr. Shin, an off-site oral surgeon, and does not indicate that further appointments with other dental and medical providers, including to address post-operative pain, were unnecessary. Such an inference is supported by evidence in Wilson's medical record indicating that Wilson reported jaw

---

[15] See Third Amendment Compl. (doc. no. 65) at ¶¶ 77, 79-80.

[16] Wilson's Medical Record (doc. no. 86) at 57.

9

pain to prison staff on multiple occasions after his surgery—including on July 1, 2019[17] and January 27, 2020[18]—and that one prison staff member noted on July 11, 2019 that Wilson's "bite is off" and there was a "potential for orthodontics in the future."[19]

The defendants' next argument focuses on the report of Wilson's expert witness, Dr. Constantine Laskarides, an oral and maxillofacial surgeon. The defendants argue that Wilson cannot prove that Currier was deliberately indifferent to his serious medical needs because Dr. Laskarides' report "is silent as to the follow-up care Plaintiff received," and Dr. Laskarides does not provide "any opinions about appointments that were allegedly cancelled."[20]

This characterization of Dr. Laskarides' expert report is accurate, but the absence of expert testimony on these matters is not necessarily fatal to Wilson's claim. On this record, the court cannot definitively conclude that the jury requires expert testimony to determine whether Currier acted with deliberate indifference. A jury could plausibly make the requisite findings—concerning, for example, the objective seriousness of Wilson's post-operative pain, the importance of check-ups and/or treatment for post-operative pain, and Currier's knowledge of the harm attendant to the denial of such care—without the assistance of expert testimony. See, e.g., Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005) ("a lay person would recognize the need for a doctor's care to

---

[17] Id. at 49.

[18] Id. at 47.

[19] Id. at 48.

[20] Mot. for Summ. J. (doc. no. 86) at 6.

treat severe heartburn and frequent vomiting"); Silva v. Rhode Island, No. CV 19-568JJM, 2021 WL 4712289, at *1 (D.R.I. Sept. 14, 2021) ("a claim of unconstitutionally unreasonable health care brought pursuant to § 1983 does not necessarily require expert testimony" (citing cases)); but see Roberts v. Wentworth-Douglass Hosp., No. 09-CV-34-SM, 2011 WL 1230334, at *4 (D.N.H. Mar. 29, 2011) (McAuliffe, J.) (finding that expert testimony was required for the plaintiff "to prevail on his constitutional claims," given that "the medical treatment provided to [the plaintiff] was not so obviously outrageous or malicious that a lay trier-of-fact could reasonably conclude that it violated either the Eighth or Fourteenth Amendments."). The defendants' motion for summary judgment as to Count 3 is accordingly denied.

  **B.**  **Medical negligence claims**

In Counts 4 and 5, Wilson alleges that (1) Dr. Groblewski, Dr. Hennigar, Dr. Donahue, and Dr. Skinner breached their duty of care by failing to appropriately and promptly supervise, monitor, diagnose, and/or treat him, and (2) Dr. Shin breached his duty of care by failing to order a CT scan during his first appointment with Wilson. According to Wilson, the resulting, untimely treatment "caused permanent injuries to [his] jaw that could have been completely eliminated or materially improved with proper medical intervention."[21]

In a medical negligence claim, the plaintiff must "prove by competent expert testimony the standard of care required of the defendant at the time the medical care was

---

[21] Third Am. Compl. (doc. no. 65) at ¶¶ 95, 106.

rendered, that the defendant failed to act in accordance with such standard, and that as a proximate result, [the plaintiff] suffered injuries which she would not otherwise have sustained." Bissett v. Renna, 142 N.H. 788, 792 (1998) (citing N.H. RSA 507-E:2). With respect to the causation element, "[t]he plaintiff need only show with reasonable probability, not mathematical certainty, that but for the defendant's negligence, the harm would not have occurred." Goudreault v. Kleeman, 158 N.H. 236, 246 (2009) (internal quotation omitted); see also Turgeon v. Cheng-Ta Dai, No. 2006-0563, 2007 WL 9619483, at *1 (N.H. June 5, 2007) ("The expert's testimony must be sufficient for a reasonable juror to find that, but for the negligence, the plaintiff would probably not have suffered her injuries.").

Though the defendants challenge the medical negligence claims on a few fronts, the court's analysis begins and ends with the causation element. Wilson alleges that the defendants' conduct caused him injuries in the form of ongoing pain and malocclusion. Thus, the court must determine whether Wilson provides expert testimony from which a reasonable juror could find that a causal link probably existed between the defendants' purportedly dilatory conduct and Wilson's post-operative jaw pain and malocclusion.

Wilson's expert, Dr. Laskarides, opines that "the standard of care" is that "a fractured mandible with displaced segments and malocclusion should be properly diagnosed and treated within 2 weeks from the injury."[22] He also explains that "time is

---

[22] Expert Report of Dr. Constantinos Laskarides (doc. no. 83-2) at 10.

an important element" "[i]n [the] diagnosis and treatment of facial fractures."[23] According to Dr. Laskarides, as time passes after a fracture occurs, "indirect healing takes place," and "immature, woven bone" and "scar and granulation tissue" appear in varying amounts in the injured area.[24] "Without meticulous and full cleaning of all those elements from the fractural gap," Dr. Laskarides avers, "the surgeon may not be able to realign appropriately the segments."[25]

Dr. Laskarides then discusses the relationship between the timeliness of Wison's treatment and his current condition. He writes that:

> [f]rom the reports and case notes on the records provided to me it seems that Mr. Wilson's condition is fortunately improving, and it appears that his malocclusion is minor, and he doesn't suffer a significant functional deficit. He does complain, though, of continuing jaw pain, but this is a subjective finding and requires further clinical correlation. In management of facial trauma it is not uncommon to sustain unfavorable post-operative signs and symptoms both with early and delayed management of facial fractures. Time of management is one of the many variables that may affect the outcomes.[26]

In short, Dr. Laskarides asserts that the passage of time complicates the surgeon's task, but then he opines that Wilson's current condition could also appear in patients who were treated in a timely manner, and time is one of many possible variables that can contribute to surgical outcomes. He does not, for example, tie his general proclamations

---

[23] Id. at 8.

[24] Id. at 9.

[25] Id.

[26] Id. at 11.

about the risks associated with delayed treatment to the facts of this case and/or express the relative importance of timeliness for Wilson's injury. This opinion may be sufficient to support a <u>possible</u> link between the defendants' conduct and Wilson's injuries, but not a <u>probable</u> one. Thus, Wilson's expert evidence falls short, as "causation is a matter of probability, not possibility." Pillsbury-Flood v. Portsmouth Hosp., 128 N.H. 299, 305 (1986) (internal citation omitted).

It follows that Wilson cannot sustain his burden of proof with respect to the causation element of the medical negligence claims. This "complete failure of proof concerning an essential element of [Wilson's] case necessarily renders all other facts immaterial" and entitles each of the defendants to judgment as a matter of law as to the medical negligence claims.[27] Celotex Corp., 477 U.S. at 323. Counts 4 and 5 are accordingly dismissed.

## IV. Conclusion

For the reasons stated above, the summary judgment motion of the NHDOC defendants[28] is DENIED-IN-PART, with respect to Counts 1, 2, and 3, and GRANTED-

---

[27] Wilson also concedes that Dr. Laskarides "has not specifically identified a breach of the standard of care by Dr. Shin." Pl.'s Objection to Dr. Shin's Mot. for Summ. J. (doc. no. 87-1) at ¶ 5. Under the record before the court, this constitutes an additional failure of proof as to a necessary element of Wilson's medical negligence claim and provides another sufficient basis for granting summary judgment in Dr. Shin's favor. See Bissett, 142 N.H. at 792 (in a medical negligence claim, the plaintiff must "prove by competent expert testimony the standard of care required of the defendant at the time the medical care was rendered, that the defendant failed to act in accordance with such standard, and that as a proximate result, [the plaintiff] suffered injuries which she would not otherwise have sustained." (citing N.H. RSA 507-E:2)).

[28] Doc. no. 86.

IN-PART, with respect to Counts 4 and 5. Dr. Shin's summary judgment motion[29] is GRANTED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: October 24, 2023

cc: Michael A. Delaney
　　Pamela L.P. Eaton
　　Samuel R. V. Garland
　　Melissa M. Hanlon
　　Allyson Moore
　　Amanda Ellen Quinlan
　　Megan Alydia Sigar

---

[29] Doc. no. 83.